08-3143

## IN THE UNITED STATES COURTS OF APPEALS
## FOR THE TENTH CIRCUIT

GRETA SEMSROTH, KIM
WAREHIME, and SARA VOYLES

      Plaintiffs-Appellants

v.

CITY OF WICHITA,

      Defendant-Appellee

---

On Appeal from the United States District Court
for the District of Kansas

The Honorable Kathryn Vratil
District Judge
D.C. No. 06-2376

---

APPELLANTS' OPENING BRIEF

---

Respectfully Submitted,
LAWRENCE W. WILLIAMSON, JR.
**Williamson Law Firm, LLC**
**Attorney and Counselor at Law**
816 Ann Ave
Kansas City, Kansas  66101
Telephone:  (913) 871-7060


No Oral Argument Requested

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................. i

TABLE OF AUTHORITIES ......................................................... ii

Federal Cases ............................................................................... ii

PRIOR OR RELATED APPEALS................................................v

STATEMENT OF JURISDICTION...........................................1

ISSUE STATEMENT .................................................................1

**I.   WHETHER PLAINTIFFS PRESENTED SUFFICIENT EVIDENCE TO SUBMIT THEIR CASE TO A JURY** ...........................................1

STATEMENT OF THE CASE....................................................1

Nature of the Case.....................................................................1

Course of Proceedings Below and Determination of the Court............................1

FACTS .......................................................................................1

ARGUMENT AND ANALYSIS .................................................5

A.   Summary Judgment Standard .........................................5

B.   Defendant Retaliated Against Plaintiffs.........................8

CONCLUSION.........................................................................32

STATEMENT REGARDING ORAL ARGUMENT ............................32

CERTIFICATE OF COMPLIANCE.......................................33

CERTIFICATE OF SERVICE ................................................34

ATTACHMENTS....................................................................35

## *TABLE OF AUTHORITIES*
### *FEDERAL CASES*

*Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir.1999) ................20

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) ....................................6

*Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th
     Cir.2006) ...........................................................................................................12

*Beck v. Quiktrip Corp.*, 708 F.2d 532, 535 (10th Cir.1983)...................................28

*Burlington N. & Santa Fe R.R. Co. v. White*, 126 S.Ct. 2405, 2412, 165 L.Ed.2d
     345 (2006) ................................................................................. 12, 15, 16, 17

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265
     (1986) ..................................................................................................................6

*Colon-Sanchez v. Marsh*, 733 F.2d 78, 81 (10th Cir.) cert. denied 469 U.S. 855,
     105 S.Ct. 181, 83 L.Ed.2d 115 (1984) .................................................................29

*Croy v. Cobe Laboratories, Inc.*, 345 F.3d 1199, 1202-1203 (10th Cir. 2003) ......22

*Danville v. Regional Lab Corp.*, 292 F.3d 1246, 1250 (10th Cir.2002)..................28

*Davidson v. Citizens Gas & Coke Utility*, 470 F.Supp.2d 934, 949 .......................22

*Desert Palace, Inc. v. Costa*, 539 U.S. 90 (U.S. 2003) ...................................... 9, 13

*Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1139 n. 11 (10th Cir.2003) .28

*Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir.2000) ....................20

*Franklin v. Okla. City Abstract & Title Co.*, 584 F.2d 964, 969 (10th Cir. 1978) ....7

*Fye v. Oklahoma Corp. Com'n*, 2008 WL 509371, *6 (10th Cir. 2008)..................8

*Gordon v. United Airlines, Inc.*, 246 F.3d 878 (7th Cir. 2002) ..............................29

*Griffith v. City of Des Moines,* 387 F.3d 733, 736 (8th Cir.2004)............................8

*Haas v. Kelly Services, Inc*., 409 F.3d 1030, 1034-35 (8th Cir.2005)....................24

*Heim v. State of Utah*, 8 F.3d 1541, 1546 (10th Cir.1993)......................................13

*Hicks v. City of Watonga, Okla*., 942 F.2d 737, 743 (10th Cir.1991) ......................6

*Jaramillo v. Colorado Judicial Dept*., 427 F.3d 1303, 1310 (10th Cir. 2005)........27

*Johnson v. City of Tulsa*, 199 Fed.Appx. 677, 684, 2006 WL 2709647, 6 (10th Cir. 2006)...............................................................................................................11

*Kanatser v. Chrysler Corp*., 199 F.2d 610, 620 (10th Cir. 1952) ...........................26

*Kessler v. Westchester County Dept. of Social Servs*., 461 F.3d 199, 201 (2d Cir.2006) ............................................................................................................16

*Ledbetter v. Goodyear Tire & Rubber Co*., 27 S. Ct. 2162 (2007) ........................22

*Martin v. AT&T Corp*., 331 F.Supp.2d 1274, 1291 (D.Col. 2004) ........................28

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973).......................8

*Meeks v. Computer Assocs*., 15 F.3d 1013, 1021 (11th Cir.1994) .........................11

*Miller v. CIGNA Corp*., 47 F.3d 586, 601 (3rd Cir. 1995).....................................10

*Minshall v. McGraw Hill Broadcasting Company*, 323 F.3d 1273 (10th Cir. 2003) ............................................................................................................................13

*Mitchell v. City of Wichita, Kansas*, 140 Fed.Appx. 767, 778 (10th Cir. 2005) .....13

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 ........................ 21, 22, 23

*NLRB v. Transportation Management Corp*., 462 U.S. 393, 400 n. 5, 103 S.Ct. 2469, 2473 n. 5.......................................................................................................10

*Ostrowski v. Atlantic Mut. Ins. Cos*., 968 F.2d 171, 181 (2d Cir.1992)...................8

*Piercy v. Maketa*, 480 F.3d 1192, 1198 (10th Cir. 2007) .........................................19

*Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1457 (10th Cir. 1994)......................13

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 152 (2000)..... 6, 7, 11

*Rodriguez v. Beechmont Bus Service, Inc.*, 173 F.Supp.2d 139, 150 .....................14

*S.E.C. v. Seaboard Corp.*, 677 F.2d 1297, 1298-1299 (9th Cir.1982) ...................24

*Sanchez v. Philip Morris Inc.*, 992 F.2d 244, 247 (10th Cir.1993) ........................10

*Setliff v. Memorial Hosp. of Sheridan County*, 850 F.2d 1384, 1393, n. 12 (10th Cir.1988) ........................................................................................................24

*Shannon v. Bellsouth Telecomms., Inc.,* 292 F.3d 712, 716 n. 2 (11th Cir.2002) ...14

*Shorter v. ICG Holdings, Inc.*, 188 F.3d 1204, 1207 (10th Cir.1999)....................13

*Sprint/United Management Co. v. Mendelsohn*, --- S.Ct. ---, 2008 WL 495370, *6 (2008) .........................................................................................................21

*Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000) ...........................8

*Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir.1999).......12

*Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1512 (10th Cir.1997)........................ 9, 21

*Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) ........................28

*U.S. Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 716-717 (1983) ....25

*West v. Philadelphia Elec. Co.*, 45 F.3d 744, 755 (3rd Cir.1995) ..........................23

*Williams v. Bowen*, 844 F.2d 748, 755, (10th Cir.1988) .......................................26

*Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 227 (2d Cir.2006) ........................16

## PRIOR OR RELATED APPEALS

There is a related appeal. *See* 07-3155.

## STATEMENT OF JURISDICTION

Jurisdiction is proper in this Court pursuant to Fed. App. R. 4(a)(1). Order and Judgment was issued in this matter on April 28, 2008 granting Appellee's Motion for Summary Judgment. (Doc. Nos. 94-95). The Notice of Appeal was timely filed on May 28, 2008. (Doc. No. 96).

## ISSUE STATEMENT

**I.    WHETHER PLAINTIFFS PRESENTED SUFFICIENT EVIDENCE TO SUBMIT THEIR CASE TO A JURY**

## STATEMENT OF THE CASE

### Nature of the Case

This case is about female officers suffering retaliation for filing a lawsuit and making complaints about gender discrimination.

### Course of Proceedings Below and Determination of the Court

Plaintiffs filed this action challenging employment decisions against them as retaliatory. The lower court found that Plaintiff Semsroth could not show a casual connection between the employment decision and the protected activity. The lower court found that plaintiffs Voyles and Warehime did not show that they suffered an adverse action that a reasonable employee would have considered materially adverse. The lower court wrongfully made these findings in granting defendant's summary judgment motion.

## FACTS

**General Facts**

The plaintiffs filed an action styled the same as this matter against the defendants on July 28, 2004. That matter is pending before this court. See 07-3155.

After this date, the plaintiffs faced other actions that were retaliatory and exhausted all administrative remedies and this is not at issue.

**Plaintiff Warehime**

In the summer of 2005, Sgt. Quick informed Warehime that she received a position as a SRO (School Resource Officer) at Hamilton Middle School. This was confirmed by Captain Nelson. (Applt. App. at 143-144, 146-147: Warehime Dep. at 7:23-8:6; 10:1-24; 18:2-7; 23:22-25). Warehime then filed an internal complaint. Plaintiff turned her complaint into Sergeant Quick, the same Sergeant that informed her about receiving her position. (Applt. App. at 144, 146: Warehime Dep. 12:11-22; 21:22-25). Defendant received the complaint made by Plaintiff Warehime on June 29, 2005 (Applt. App. at 121, App. at 144:Warehime Dep. 12:15-23). This was an internal complaint for discrimination (Applt. App. at 145: Warehime Dep. 16:17-17:4). The next morning Warehime was pulled into Captain Nelson's office and the job was taken away from her. Captain Nelson informed Warehime that she could not have the Hamilton position. After being denied, Warehime pursued actions with the Fraternal Order of Police ("FOP") and eventually received the position that she was denied. (Applt. App. at 143-144,

146-148: Warehime Dep. at 7:23-8:6; 10:1-24; 18:2-7; 23:22-25; 25:7-12; 29:10-17)

Warehime handed her complaint to Sgt. Quick and ultimately the complaint was addressed by Susan Leiker. (Applt. App. at 144, 146, 149: Warehime Dep. 12:11-22; 21:22-25; 32:12-15).   Warehime filed the complaint because she was tired of women not getting an opportunity to pursue ideas, while males were. Thus, she made an internal sex discrimination complaint. (Applt. App. at 121, App. at 145: Warehime Dep. 17:23-18:3) Warehime testified that the position was taken from her the very next day in a meeting with Captain Nelson after filing the Complaint. (Applt. App. at 143-144, 147: Warehime Dep. at 7:23-8:6, 10:1-24; 23:22-25). Warehime wants things to change in the Department. (Applt. App. at 151: Warehime Dep. 40:1-41:10).   After meetings with Susan Leiker and others, Warehime didn't believe that the Detective stole her idea. (Applt. App. at 145, 150: Warehime 15:17;34:2-17)

### Plaintiff Semsroth

Semsroth experienced multiple acts of retaliation. (Applt. App. at 126: Semsroth Dep. II 5:20-24).   Beat 39 is referred to as banishment beat because officers who have been in trouble are sent to these beats and this beat has little activity that can also have a negative impact on an officer's career advancement. (Applt. App. at 170-171: Sergeant Wiley Dep. 68:8-11; 85:1-3).  Newer officers and officers with disciplinary problems are sent to 39 beat.  (Applt. App. at 174-

175: Semsroth Dep. I 20:11-16; 21:12-19).  Beat 39 is referred to as banishment beat because officers who have been in trouble are sent to these beats and this beat has little activity that can also have a negative impact on an officer's career advancement.  (Applt. App. at 170-171: Sergeant Wiley Dep. 68:8-11; 85:1-3). Newer officers and officers with disciplinary problems are sent to 39 beat. (Applt. App. at 174-175: Semsroth Dep. I 20:11-16; 21:12-19).

In 2004, within weeks after meeting with Susan Leiker to discuss discriminatory acts, Sergeant Watts told Semsroth that he had good news and bad news. Semsroth was sent to Beat 39 in retaliation for complaining to EEO and to "put her out there [Beat 39], [so] she won't have anything to complain about." (Applt. App. at 171-172: Sergeant Wiley Dep. 85:23-86:6; Applt. App. at 173: Semsroth Dep. I 19:18-19).

In 2005, Semsroth voluntarily went to visit the psychologist based on Lt. Bannister's recommendation. Bannister made the appointment for Semsroth. (Applt. App. at 131: Semsroth Dep. II at 22:7-25).  This visit was supposed to be to address PTSD that she had been experiencing.  (Applt. App. at 130: Semsroth Dep. II at 19:11-21:7).   However, once she was there, she learned that Lt. Bannister had informed the doctor that she was a plaintiff in a lawsuit and that the doctor was to conduct a fitness for duty test on Semsroth. (Applt. App. at 132-133: Semsroth Dep. II at 28:17-29:19; 30:6-22).  However, a fitness for duty test primarily is ordered based on deficient performance.   (Applt. App. at

137:Semsroth Dep. II at 47:4-12) Semsroth was hoodwinked into receiving a fitness for duty test.

**Plaintiff Voyles**

While the lawsuit (07-3155) was pending, Sara Voyles requested a light duty position. She was told that that there was a position on the Sixth Floor in the juvenile section. (Applt. App. at 153-154: Voyles Dep. 25:24-27:10). However, she was told that she could not work anywhere on the floor because she had previously complained about a detective on the floor, but in a different department. (Applt. App. at 153-154: Voyles Dep. 25:24-27:10).

During a meeting, Captain Allred told Sara Voyles that he had concerns about her being anywhere on the sixth floor because Lieutenant Bohannon was there, in a different division and he also mentioned the fact that Voyles had filed a lawsuit. At that time Voyles was told that she was still probably going to go up north and clerk with Captain Norris at Patrol North. She was also told that Captain Speer had a place for her to BOF at Patrol South. They also told her that she couldn't stay out east to BOF because it wasn't a secure facility. (Applt. App. at 161: Voyles Dep. 17:10-22).

<u>ARGUMENT AND ANALYSIS</u>

I.    SUMMARY JUDGMENT SHOULD BE DENIED AND PLAINTIFFS ARE ENTITELD TO A JURY TRIAL IN THIS MATTER

A.    <u>Summary Judgment Standard</u>

Pursuant to Rule 56, summary judgment is only appropriate if:

> 1) there are no issues of "material" fact requiring a trial for their resolution; and

> (2) in applying the law to the undisputed facts, one party is clearly entitled to judgment.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). When a defendant moves for summary judgment, a defendant bears the burden must demonstrate that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c); *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga, Okla.,* 942 F.2d 737, 743 (10th Cir.1991).

Courts should be hesitant to grant summary judgment in cases where the intent of an actor is at issue. As such, the court must draw all reasonable inferences in favor of the plaintiffs. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 152 (2000)("The court also failed to draw all reasonable inferences in favor of petitioner. For instance, while acknowledging "the potentially damning nature" of Chesnut's age-related comments, the court discounted them on the ground that they "were not made in the direct context of

Reeves's termination."). If there are doubts, these doubts must be resolved against the defendant. *Franklin v. Okla. City Abstract & Title Co.*, 584 F.2d 964, 969 (10th Cir. 1978). The United States Supreme Court in *Reeves* certified that the defendant bears this burden at the Summary Judgment stage in employment discrimination cases to present evidence that is *uncontradicted, unimpeached, and provided by disinterested witnesses. Reeves,* 120 S. Ct. at 2110.

Here, the lower court erred in several ways. However, because this Court reviews the issues hearing as a matter of de novo, plaintiffs will not recite each error. At this point it is sufficient to state that the lower court made its determination to deny plaintiffs' their constitutional right to a jury trial without considering much of the evidence presented by plaintiffs. For instance, the lower court did not consider plaintiffs' statistical evidence, anecdotal expert evidence, and evidence of any discrimination occurring outside the time limit set forth in the court's opinion. The Supreme Court has admonished such actions and has mandated that lower courts must consider all facts (prima facie and pretext) as a whole and determine whether plaintiffs presented evidence. *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 152 (2000). Had the lower court properly done so, as this court must, it is patently clear that this case belongs in front of a jury.

**B.**          **Defendant Retaliated Against Plaintiffs**

A plaintiff may meet the burden of establishing a case of retaliation either by relying on the *McDonnell Douglas* burden shifting method, by establishing discrimination directly, in which case the *McDonnell Douglas* framework is inapplicable, or by showing a mixed motive. *Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132, 1136 (10th Cir. 2000); *see also McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-804 (1973). In *Fye v. Oklahoma Corp. Com'n*, 2008 WL 509371, *6 (10th Cir. 2008) this court recently announced:

> A mixed-motive case is not established, and the *Price Waterhouse* framework does not apply, until the plaintiff presents evidence that directly shows that retaliation played a motivating part in the employment decision at issue. We have referred to this method of establishing retaliation as "the direct method," *see Medlock,* 164 F.3d at 550, but we emphasize that although some of our cases seem to suggest otherwise, we do not require "direct" evidence "in its sense as antonym of 'circumstantial.' " *See Ostrowski v. Atlantic Mut. Ins. Cos.,* 968 F.2d 171, 181 (2d Cir.1992); *see also Griffith v. City of Des Moines,* 387 F.3d 733, 736 (8th Cir.2004) ("Direct evidence in this context is not the converse of circumstantial evidence, as many seem to assume.").
>
> Thus, a plaintiff can establish retaliation "directly" under *Price Waterhouse,* through the use of direct or circumstantial evidence. In a mixed-motive case, the plaintiff must demonstrate "that the alleged retaliatory motive 'actually relate[s] to the question of discrimination in the *particular* employment decision' "and may do so through the production of either direct or circumstantial

evidence. *Medlock,* 164 F.3d at 550 (quoting *Thomas v. Nat'l Football League Players Ass'n,* 131 F.3d 198, 203 (D.C.Cir.1997)) (emphasis added) (alteration in original). Although circumstantial evidence is sufficient to establish that the employer was motivated by retaliatory animus, that circumstantial evidence must be tied "directly" to the retaliatory motive. *See Thomas v. Denny's, Inc.,* 111 F.3d 1506, 1512 (10th Cir.1997) ("A plaintiff will be entitled to the burden-shifting analysis set out in *Price Waterhouse* upon presenting evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged [retaliatory] attitude." (alteration in original) (quotations omitted)).

Thus, if there is circumstantial evidence that an employment action was in retaliation for engaging in protected activity, a plaintiff does not have to show that retaliation was the sole purpose of the action. In other words, a defendant could have both a legitimate and retaliatory reason for an act and still be liable under the *Price Waterhouse* theory. The Supreme Court clarified in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (U.S. 2003) that a plaintiff is entitled to a mixed motive instruction if a plaintiff "present[s] sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that "race, color, religion, sex, or national origin was a ***motivating factor*** for any employment practice" by either circumstantial evidence or direct evidence. *Id.* at 101-102. (emphasis added).

Although courts have not clearly set forth how *Desert Palace* changes any standards on summary judgment, it is clear that the classic *McDonnell Douglas*

burden shifting paradigm is affected.  Thus, under *McDonnell Douglas*, so long as

the business presents a legitimate non-discriminatory reason a plaintiff is tasked to

show that "the true motive for the employment decision violates [the statute]."

*Sanchez v. Philip Morris Inc.,* 992 F.2d 244, 247 (10th Cir.1993).

> As the Third Circuit has stated:

>> The Court has made clear that 'mixed-motives' cases, such as the present one, are different from pretext cases such as *McDonnell Douglas* and *Burdine.* In pretext cases, 'the issue is whether either illegal or legal motives, but not both, were the "true" motives behind the decision.' *NLRB v. Transportation Management Corp.,* 462 U.S. 393, 400 n. 5, 103 S.Ct. 2469, 2473 n. 5 [76 L.Ed.2d 667] (1983). In mixed-motives cases, however, there is no one 'true' motive behind the decision.

*Miller v. CIGNA Corp.*, 47 F.3d 586, 601 (3rd Cir. 1995)(pre-*Desert Palace*

decision).   After *Price Waterhouse*, a plaintiff needs to only show that a

motivating factor of the adverse employment action.  Indeed, the court stated that

when a plaintiff challenges an employment decision that may have been the

product of a mixture of legitimate and illegitimate motives, *i.e.* mixed motives, the

plaintiff need not fit into the *McDonnell Douglas* burden-shifting framework. *Id.*

at 246-47.   Rather, the Supreme Court held that once plaintiff shows that an

improper motive played a motivating part in an employment decision, defendant

may avoid liability if it proves that it would have made the same decision despite

the improper motive. *Id.* at 244-45.   Thus, on summary judgment, in applying a

mixed motive paradigm, a plaintiff need not prove that an employer's proffered reason for the adverse decision is pretextual.  An employer may satisfy its burden on the mixed-motive defense by presenting sufficient objective evidence from which the jury could reasonably conclude that the employee's job performance was so unsatisfactory that he would have been discharged even in the absence of an improper motive." *Johnson v. City of Tulsa*, 199 Fed.Appx. 677, 684, 2006 WL 2709647, 6 (10th Cir. 2006).

Therefore, under a mixed motive theory, a plaintiff is entitled to a jury trial if he or she meets a prima facie case of retaliation.  Because the mixed motive instructions remove the "pretext" analysis at trial the "pretext" analysis is removed from the summary judgment analysis.[1]  *See Reeves v. Sanderson Plumbing Products, Inc.* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)(holding that the standard for granting summary judgment "mirrors" the standard for judgment as a matter of law).[2]

Retaliation is a separate offense under Title VII." *Meeks v. Computer Assocs.,* 15 F.3d 1013, 1021 (11th Cir.1994) (citing 42 U.S.C. § 2000e-3(a)). Title VII's anti-retaliation provision prohibits an employer from retaliating against an

---

[1] Under *McDonnell Douglas*, even if there was a motivating factor of discrimination, so long as the legitimate reason advanced by a defendant is true, the defendant could escape liability.

[2] This issue is currently before the Tenth Circuit of Court of Appeals in *Semsroth v. City of Wichita*, 07-3155.  Oral arguments were completed on January 24, 2008.

employee "because [she] has opposed any practice made an unlawful employment practice" by Title VII, including discrimination on the basis of race. 42 U.S.C. § 2000e-3(a). The goal of this provision is "prevent[ ] an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees," including freedom from retaliation. *Burlington N. & Santa Fe R.R. Co. v. White,* 126 S.Ct. 2405, 2412, 165 L.Ed.2d 345 (2006). "An employee need not prove the underlying claim of discrimination for the retaliation claim to succeed." *Sullivan v. Nat'l R.R. Passenger Corp.,* 170 F.3d 1056, 1059 (11th Cir.1999)(citations omitted).

In order to establish a prima facie case of retaliation, Plaintiffs must show that "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Argo v. Blue Cross & Blue Shield of Kan., Inc.,* 452 F.3d 1193, 1202 (10th Cir.2006).

Prior to addressing the prima facie elements, it is important to note that Voyles does not have to rely on the pretext burden shifting because she was expressly told that the reason that she could not have the position was because she filed a lawsuit that named a supervisor.   This is direct evidence of retaliation. This court defined direct evidence as:

> "Direct evidence is '[e]vidence, which if believed, proves [the] existence of [a] fact in issue without inference or presumption.' " *Shorter v. ICG Holdings, Inc.,* 188 F.3d 1204, 1207 (10th Cir.1999)(quoting *Black's Law Dictionary* 460 (6th ed.1990)), *overruled in part on other grounds by Desert Palace, Inc. v. Costa,* 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). "Statements showing 'an existing policy which itself constitutes discrimination' are direct evidence of discrimination." *Heim v. State of Utah,* 8 F.3d 1541, 1546 (10th Cir.1993)(quoting *Ramsey v. City & County of Denver,* 907 F.2d 1004, 1008 (10th Cir.1990)). Thus, statements expressing a personal opinion, "even when reflecting a personal bias or prejudice, do not constitute direct evidence of discrimination." *Shorter v. ICG Holdings, Inc.,* 188 F.3d at 1207.

*Mitchell v. City of Wichita, Kansas*, 140 Fed.Appx. 767, 778 (10th Cir. 2005). "While isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decision, a plaintiff can show such animus by demonstrating a nexus between the allegedly discriminatory statements and the defendant's decision to terminate the plaintiff." *Minshall v. McGraw Hill Broadcasting Company,* 323 F.3d 1273 (10th Cir. 2003) (internal citations omitted). *See also, Rea v. Martin Marietta Corp.,* 29 F.3d 1450, 1457 (10th Cir. 1994) (holding that a causal nexus can be shown if the allegedly discriminatory comments were directed at the plaintiff, her position, or the defendant's policy which resulted in the adverse action taken against the plaintiff).

Here, the reason provided to Voyles as to the reason why she could not get a position was because of act of filing a lawsuit that named a supervisor. This is a

textbook example of a statement "demonstrating a nexus" between the protected opposition (filing a lawsuit naming a supervisor) and "the defendant's decision to" subject a plaintiff to an adverse action (prevention from assuming a desirable position). Therefore, Voyles is opted out of the pretextual analysis and is entitled to a jury trial.

## 1. Each plaintiff has engaged in protected opposition to discrimination

Greta Semsroth, Sara Voyles, and Kim Warehime have engaged in protected activity. First each plaintiff filed a federal lawsuit that is pending on appeal. *See* 04-1245-MLB and 07-3155. Additionally, while this 2004 case was pending each plaintiff filed a separate EEOC charges. (See Exhibits to Response to Motion for Sanctions). Moreover, Kim Warehime filed an internal charge of discrimination on June 29, 2005 to the same supervisor who previously informed her that she received the School Resource Officer Position. (Exhibit 2). Each of these acts constitutes protected activities. Indeed, individuals who have filed informal complaints to their supervisors. *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 n. 2 (11th Cir.2002); *Rodriguez v. Beechmont Bus Service, Inc.*, 173 F.Supp.2d 139, 150 (S.D.N.Y. 2001).

Defendant argues that plaintiff's Warehime's complaint was not true. (Def. Memo at 19) However, there is no such evidence that Warehime's complaint was not true. Moreover, there is no evidence that Warehime knew her complaint to be

false at the time that it was filed. Her testimony was that she has no evidence that the Detective actually knew about her project. This does not mean that she did not have a good faith belief that someone else had stolen her idea as she had been trying to get this idea picked up for a while. Indeed, Warehime stated that the reason that she filed the complaint was because she was tired of women not getting an opportunity to pursue ideas, while males were. Thus, she made an internal sex discrimination complaint. (Exhibit 2, pp. 1, 4("This is the second time this week I have read in the paper that a male officer has proceeded with projects that I have suggested and have been turned down or put off"); Warehime 17:23-18:3) The purpose of a complaint is so that an investigation can take place. While purporting to proffer the proper good faith standard, the defendant is truly attempting to create a "reasonable cause" standard regarding complaints that form the basis of a retaliation complaint. This is inappropriate and has no basis in the law. There is absolutely no record that Warehime knew that she was filing a false complaint. Thus, this argument fails.

### 2. Plaintiffs suffered a challenged action that a reasonable employee would find materially adverse

A plaintiff must prove "that a reasonable employee would have found the challenged action materially adverse," *i.e.,* that the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White,* 126 S.Ct.

2405, 2415, 165 L.Ed.2d 345 (2006) (citation and quotation marks omitted). The challenged action need not affect the terms and conditions of employment in order to constitute unlawful retaliation. *Id. at 2411-14*; *Zelnik v. Fashion Inst. of Tech.,* 464 F.3d 217, 227 (2d Cir.2006). Instead, retaliation can be actionable even when the alleged adverse action "had not effected any change in [the employee's] salary, benefits, job title, grade, or hours of work[.]" *Kessler v. Westchester County Dept. of Social Servs.,* 461 F.3d 199, 201 (2d Cir.2006). Thus, the proper inquiry is whether the alleged action would dissuade a reasonable worker from making or supporting a charge of discrimination.

The three acts complained of are (1) Kim Warehime was denied a position that was previously granted to her; (2) Greta Semsroth was given a fit for duty evaluation when she was supposed to be seen for emotional issues; and (3) Sara Voyles was told that there was a position that she could have on light duty, but then was told that she could not go there because there was someone on the same floor that had talked about her when she was present, despite the fact that it was a different section.[3]

Here, a reasonable juror could find "that a reasonable employee would have

---

[3] Defendant denies that many of these acts took place or deny the context in they occurred.  For instance, defendant contends that Lt. Bohannan did not call Semsroth, however the doctor informed Semsroth that he was told to do a fit for duty test and it was noted on her file.  These disagreements must be viewed in a light most favorable to plaintiff and assumed true.  At the very least, there is a serious question of fact regarding these acts.

found the challenged action[s] [discussed above] materially adverse." *Burlington Northern, 126 S.Ct. at 2415*. In other words, a reasonable juror could find that these actions, particularly when considered collectively, "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* That is all the plaintiffs must show in order to prove an adverse action. For instance, what employee would want to be subjected to a fit for duty exam simply because they need someone to talk to about seeing a man shot?  Especially given the fact, that a fitness for duty test is supposed to be ordered when there were issues with an officer's performance and there were no issues with Semsroth's performance.  What reasonable employee would want to be sent for a fit for duty test because they complain about discrimination? None.

In regards to Voyles, no reasonable employee would complain about a supervisor harassing them or make any other complaint if it will affect their position of choice.  Defendant makes factual arguments as to why Ms. Voyles' expectation was not reasonable.   In other words, defendant is invoking a subjective standard regarding reasonableness.   However, the Supreme Court in *Burlington* rejected this subjective view and stated quite clearly:

> The Court refers to a *reasonable* employee's reactions because the provision's standard for judging harm must be objective, and thus judicially administrable. The standard is phrased in general terms because the significance of any given act of retaliation may depend upon the particular circumstances. Pp. 2414-2416.

> 3. Applying the standard to the facts of this case, there was a sufficient evidentiary basis to support the jury's verdict on White's retaliation claim. Contrary to Burlington's claim, a reassignment of duties can constitute retaliatory discrimination where both the former and present duties fall within the same job description. Almost every job category involves some duties that are less desirable than others. That is presumably why the EEOC has consistently recognized retaliatory work assignments as forbidden retaliation .

*Burlington Northern*, at 2407-2408.

As applied to Voyles, she was told that there was a position available for her. Then she was told that she could not have it because she filed a lawsuit that named a detective that would be on the same floor but a different division. According to the defendant, an employee can be denied job assignments, even temporary ones because she was a victim and stood up for her rights. This is not the law. As the Supreme Court in *Burlington* held, one must review plaintiff's allegations objectively. Why would Voyles have reason to believe that she couldn't go to the position when she was told that she could? She then went to discuss such with her supervisor and told her supervisor that she had the conversation. However, the substance of these conversations are in dispute and not appropriate for resolution here. Therefore, Voyles meets this element.

Lastly, and probably more clearly than the rest, no reasonable employee would lodge a complaint if a job would be taken from them the very next day.

Surely if a reassignment, as in *Burlington*, constituted an adverse action, having a job taken away qualifies.  Defendant argues that this does not constitute an adverse action because Warehime was eventually provided the position.  Said another way, defendant argues that Warehime's position was simply delayed and a delay is not an adverse action.  This court need not reach the question as to whether a delay can equate to a materially adverse action as defendant's framing is incorrect.  Warehime was given a job. She made a complaint.  She was told she couldn't have the job.  Defendant later told her she could have the job.  Simply because the defendant saw the error of its ways does not mean that it removes the sting from the adverse action of telling Warehime that she could not have the job the day after making a complaint.  In other words, would a reasonable employee be dissuaded from making a complaint if they knew that they would have a position taken away from them (even though they may get it later) if they made a complaint? The answer is yes and Warehime meets this prong.  All of the other arguments by defendant goes to weight, which is a question for the jury.   The plaintiffs can therefore state a *prima facie* claim of retaliation based on these actions.

### 3.    Casual Connection and or Pattern/Direct Evidence

"A retaliatory motive may be inferred when an adverse action closely follows protected activity.  However, unless the termination is *very closely* connected in time to the protected activity, the plaintiff must rely on additional

evidence beyond temporal proximity to establish causation." *Piercy v. Maketa*, 480 F.3d 1192, 1198 (10th Cir. 2007) citing (*Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir.1999) (emphasis in original)).

Defendant argues that plaintiffs Voyles and Semsroth cannot show a casual connection because their first lawsuit in July 2004 and the instances they faced occurred in 2005. On its face, this argument seems attractive. However, the problem with defendant's argument is that it overlooks the fact that the plaintiffs have alleged that they have been victims of a pattern of retaliation after making complaints and filing their previous lawsuit. For instance, after this case was filed, one supervisor stated that he wished the "bitches would just die." (Semsroth Dep. II 10:22-11:3) Additionally, after Semsroth complained to EEO, she was sent to banishment beat so that she wouldn't complain. Although Plaintiff Plush's claims have been dismissed because she is unavailable, her incidents are nonetheless relevant to this court's inquiry. Within days after filing this action, there were three separate disciplinary actions filed against her. After Kim Warehime made a complaint, a job was pulled from her.

Because there is a pattern of retaliation, a casual connection need not be established. Indeed, this form of evidence is appropriate when a plaintiff cannot show temporal proximity. Absent "unusually suggestive" temporal proximity, the plaintiff can infer a retaliatory motive using circumstantial evidence to establish a "pattern of antagonism" or "retaliatory animus" in the intervening time period

between the protected activity and the adverse action. *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 281 (3d Cir.2000). *See also Sprint/United Management Co. v. Mendelsohn*, --- S.Ct. ---, 2008 WL 495370, *6 (2008)("The question whether evidence of discrimination by other supervisors is relevant in an individual ADEA case is fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case.").[4]  Thus, the court can consider multiple retaliatory acts occurring during the "time period between the protected activity and the adverse action.

Additionally, the retaliation is part of a continuing violation. Although a continuing violation normally serves to save acts not administratively filed within the statutory timeframes, it is instructive here to tie the current retaliation to the initial complaint.

The continuing violation theory developed in cases involving Title VII of the Civil Rights Act of 1964. *Thomas v. Denny's Inc.,* 111 F.3d 1506, 1513 (10th Cir.1997). When a series of acts constitutes a violation of Title VII, the Court considers them as a whole as long as plaintiff files administrative charges on time for at least one of the acts.  *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 105.  After the decision in *Morgan*, discrete acts in individual actions, such as

---

[4] Defendant does not argue that Warehime would fail to meet the casual connection.  She was told that the position was taken away one day after lodging the complaint.

terminations, are not qualified for the continuing violation theory.  However, *Morgan* is inapplicable here as the Supreme Court noted "[w]e have no occasion here to consider the timely filing question with respect to 'pattern-or-practice' claims brought by private litigants as none are at issue here. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115, n.9 (2002).   Thus, after *Morgan* and after *Ledbetter v. Goodyear Tire & Rubber Co.*, 27 S. Ct. 2162 (2007) (which did not touch pattern and practice claims), although the continuing violation theory does not generally apply to "discrete acts", the door is not closed on such a theory regarding "pattern and practice" claims.  And here, plaintiffs challenge an ongoing pattern and practice of gender discrimination.

Indeed, in *Davidson v. Citizens Gas & Coke Utility*, 470 F.Supp.2d 934, 949 (S.D.Ind. 2007) the court interpreted *Morgan* as plaintiffs and stated "[i]n effect, the *Morgan* decision permits the continuing violation doctrine to apply only to remediate hostile work environment or pattern-and-practice claims."

This Circuit has previously applied the continuing violation theory to claims based on such claim's similarity to hostile work environment claims.  In *Croy v. Cobe Laboratories, Inc.*, 345 F.3d 1199, 1202-1203 (10th Cir. 2003) this Circuit applied the continuing violation to a case similar to the one at hand.  In doing so, the court stated:

> Appellant has alleged specific instances of discrimination in the form of failures to promote her in particular circumstances. We agree with the district

court that, to be actionable, these instances must have occurred within the limitations period. However, while Appellant has not specifically alleged a hostile work environment, she has alleged the existence of a "glass ceiling" on the advancement of female employees. This "glass ceiling" claim is more akin to a hostile environment claim than a discrete act claim. . . .

Because this claim is akin to a hostile environment claim, it is appropriate to look to the entire time period of alleged discrimination in order to determine liability. As the Supreme Court explained in Morgan, "the statute [does not] bar an employee from using the prior acts as background evidence in support of a timely claim." 536 U.S. at 113, 122 S.Ct. 2061.

*Id.* Thus, *Croy* counsels that the continuing violation theory is not simply limited to hostile work environment cases, but cases that are more similar to hostile work environment cases than discrete acts.   Indeed, in order to fall within the continuing violations theory, a plaintiff must prove: 1) that at least one act occurred within the filing period, and 2) that the harassment is "more than the occurrence of isolated or sporadic acts of intentional discrimination." *West v. Philadelphia Elec. Co.,* 45 F.3d 744, 755 (3rd Cir.1995) (internal citations omitted).  "The relevant distinction is between the occurrence of isolated, intermittent acts of discrimination and a persistent, on-going pattern." *Id.*

Here, there is a clear pattern of retaliating against those who allow their voice to be heard to stop illegal discrimination.  There is no logical reason as to why a theory similar to the continuing violation theory should be applied any different to a case where a defendant continuously retaliates against a person with

a pending lawsuit, grievance, etc. The employee is entitled to the legal protection that this court can offer. In other words, a plaintiff can still be terminated or disciplined for violating company policies, but they cannot lose their protection simply because the defendant will allow three months to pass before retaliating, thereby insulating it from legal consequences. Therefore, plaintiffs Semsroth and Voyles are able to proceed.

Because plaintiffs have met their prima facie elements, defendant's excuses are material under plaintiffs' proposal because meeting a prima facie case meets plaintiffs' burden to show that the decision made against them were motivating factors. Nonetheless, plaintiffs can still show that defendant's excuses for the treatment suffered by plaintiffs are pretextual.

### i. **Defendant's Explanations are Pretextual**

This Circuit and others have stated that summary judgment is not ordinarily appropriate for determining issues of intent or motivation. *Setliff v. Memorial Hosp. of Sheridan County,* 850 F.2d 1384, 1393, n. 12 (10th Cir.1988). *See also S.E.C. v. Seaboard Corp.*, 677 F.2d 1297, 1298-1299 (9th Cir.1982). Additionally, the Eight Circuit has also stated that summary judgment should rarely be granted in employment discrimination cases because the issue of intent is a factual determination. *Haas v. Kelly Services, Inc.,* 409 F.3d 1030, 1034-35 (8th Cir.2005). Moreover the elements established in *McDonnell Douglas* were "never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible,

orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *Furnco, supra,* 438 U.S., at 577, 98 S.Ct., at 2949.  Similarly the United States Supreme Court, in *U.S. Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 716-717 (1983) stated:

> All courts have recognized that the question ***facing triers of fact*** in discrimination cases is both sensitive and difficult. The prohibitions against discrimination contained in the Civil Rights Act of 1964 reflect an important national policy. There will seldom be "eyewitness" testimony as to the employer's mental processes. But none of this means that trial courts or reviewing courts should treat discrimination differently from other ultimate questions of fact. Nor should they make their inquiry even more difficult by applying legal rules which were devised to govern "the allocation of burdens and order of presentation of proof," *Burdine, supra,* at 252, 101 S.Ct., at 1093, in deciding this ultimate question. The law often obliges finders of fact to inquire into a person's state of mind. As Lord Justice Bowen said in treating this problem in an action for misrepresentation nearly a century ago:
>
>> "The state of a man's mind is as much a fact as the state of his digestion. It is true that it is very difficult to prove what the state of a man's mind at a particular time is, but if it can be ascertained it is as much as fact as anything else." *Eddington v. Fitzmaurice,* 29 Ch.Div. 459, 483 (1885).

(emphasis added).[5]

In addition to the questions of intent, the nature of a jury trial shows that employment discrimination cases should normally be heard by a jury after they have a chance to view the credibility of witnesses.  The court in *Hicks,* 509 U.S. 502, 509-510, held that the pretextual analysis of the *McDonnell Douglas* framework requires a credibility determination.   There are several intangibles and other factors that can only be addressed by a jury.  For instance, a witness at trial can testify inconsistent with his or her deposition testimony.[6]   At the summary judgment stage, a judge cannot consider the demeanor and body language of a witness who testifies, or how the decision maker responds on cross examination. *Williams v. Bowen,* 844 F.2d 748, 755, (10th Cir.1988)("The opportunity to observe the demeanor of a witness . . .  is invaluable, and should not be discarded lightly.")

Similarly a judge cannot weigh the credibility of witnesses.  Just because an excuse is arguable on paper doesn't mean that a jury will buy the position as juries are instructed to use their collective wisdom and common sense.  *Kanatser v. Chrysler Corp.*, 199 F.2d 610, 620 (10th Cir. 1952)(upholding jury instruction that instructed jury that they were not bound by a learned professional's opinion

---

[5] Again, *Aikens* was a pre-1991 case where the court was the fact finder. This analysis applies to juries in cases that originate post-1991.

[6] Depositions are no substitute for live cross examination as depositions are primarily used to lock a person into a statement and under normal circumstances, the deponent can only be deposed one time.   See F.R.C.P. 33.

and were to "determine the facts from all the testimony, in the light of their common sense."). Summary judgment motions do not have the benefit of opening statements or closing arguments with unanswered rhetorical questions. In short, the large part of the persuasive process associated with showing the lack of credibility and addressing a person's intention must occur at trial. Indeed, the Notes of Advisory Committee on 1963 Amendments to Rules (Subdivision (e)) provide:

> Nor is the amendment designed to affect the ordinary standards applicable to the summary judgment motion. So, for example:
>
> > ***Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate.***

(emphasis added).

This Circuit has acknowledged that the pretextual phase requires a credibility determination. *Jaramillo v. Colorado Judicial Dept.*, 427 F.3d 1303, 1310 (10th Cir. 2005). Because most discrimination cases will come down to whether the jury believes an employers explanation over the evidence presented by plaintiffs, a court cannot make a credibility determination at the summary judgment phase.

Additionally, the Supreme Court has stated that "[t]he shifting burdens of proof set forth in *McDonnell Douglas* are designed to assure that the "plaintiff

[has] his day in court despite the unavailability of direct evidence." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985). Thus, the burden shifting method should not be used to keep plaintiffs out of court: it should be used to ensure that plaintiffs are able to get into court.

Pretext can be shown "either directly by persuading the court that discriminatory reasons more than likely motivated the employer, or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Beck v. Quiktrip Corp.,* 708 F.2d 532, 535 (10th Cir.1983). "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Martin v. AT&T Corp.,* 331 F.Supp.2d 1274, 1291 (D.Col. 2004) quoting *Danville v. Regional Lab Corp.,* 292 F.3d 1246, 1250 (10th Cir.2002). Evidence relevant to such a showing may include: (1) the employer's prior treatment of plaintiff; (2) the employer's "general policy and practice with respect to minority employment," particularly statistics reflecting a general pattern and practice of discrimination; (3) disturbing procedural irregularities; and (4) the use of subjective criteria. *Doebele v. Sprint/United Mgmt. Co.,* 342 F.3d 1117, 1139 n. 11 (10th Cir.2003)(internal quotes omitted)("disturbing procedural irregularities, including deviations from normal company procedure, provide support for a

plaintiff's assertion of pretext."). This list is not meant to be exclusive, but is merely illustrative of methods by which pretext may be shown. *See Colon-Sanchez v. Marsh,* 733 F.2d 78, 81 (10th Cir.) *cert. denied* 469 U.S. 855, 105 S.Ct. 181, 83 L.Ed.2d 115 (1984). Pretext is also indicated in situations where the sincerity of the employer's belief is undercut by the unreasonableness of the belief; thus the defendant need not be taken at its word. *Gordon v. United Airlines, Inc.*, 246 F.3d 878 (7th Cir. 2002).

Defendant argues that Warehime cannot show pretext regards the "non-retaliatory reason for delaying Warehime's transfer to a position as a School Resource Officer at Hamilton Middle School in Patrol South." (Doc. 85 at 21) However, a "delay" is not the challenged action. The challenged action is the fact that she was given a position and the day after giving a complaint to her supervisor, the position was stripped away. This is not a delay and the defendant does not acknowledge that Warehime was given the position and then took it away, thus it has not articulated a non-discriminatory reason as to why the position was taken away the day after lodging a complaint. Thus, Warehime's claims unquestionably move forward.[7]

---

[7] The only reason that this claim is not appropriate for summary judgment in favor of the plaintiff is because defendant disagrees that Warehime was given the job in the first place.

Defendant states that Semsroth cannot show pretext because she was suffering from post traumatic stress. (Doc. 85 at 17-18). Defendant postulates that even if the supervisor instructed the doctor to provide a fitness for duty test, it was appropriate under the circumstances. However, this argument is not believable for three reasons. First, a fitness for duty test is supposed to be ordered when there were performance issues with an employee. Defendant does not claim that Semsroth's performance was suffering because of the stress associated with trauma experienced at the job. Thus, defendant's proffered reason that a fitness for duty test was ordered because of emotional stress is not true.

Second, defendant has a policy to deal with situations where officers experience trauma while at work. (Applt. App. at 119). "The purpose of this procedure to provide a guideline to assist members of the Department involved in job-related actions which could produce stress related after effects, i.e., line-of-duty shootings, death, suicide…" (Applt. App. at 119). Absent from this policy is any authority to provide a fitness for duty exam for experiencing trauma on the duty. This policy was to be followed when an officer experiences on the job trauma. It was not and the failure to follow a policy is a court accepted form of pretext. The weight (or how strong) of pretext is not a question for the court, but for the fact finder.

Third, Semsroth's doctor was told that Semsroth was one of the females that filed the lawsuit. In other words, the supervisor told the doctor about

Semsroth engaging in a protected activity (filing the lawsuit) and also told him to provide a fitness for duty exam (challenged act). What legitimate purpose did the supervisor have in telling the doctor about the lawsuit? None. A reasonable jury can realize that this action of the supervisor was just another link in the chain of retaliation that these ladies have faced. Therefore, Semsroth's claims survive summary judgment.

Defendant proffers that it prevented Voyles from receiving the position on the sixth floor because her supervisor wanted to keep her in Field Services, which was short-handed. Plaintiff cannot rebut this statement directly because it may be true that the supervisor wanted to keep her in Field Services. However, there is another express reason provided: because Voyles filed a complaint against a supervisor on the same floor and different division. This is where the mixed motive paradigm becomes important. Right now, the court is looking at two proffered reasons as to why an adverse decision was taken. There are two principles to guide this court. First the court, has to review all evidence in a light most favorable to the non-moving party. Second, *expressio unius est exclusio alterius* is helpful. Voyles states that she was told that she could not go to the sixth floor because she made a complaint. There was no evidence that she was told anything about Field Services being shorthanded. By informing Voyles of one reason and excluding the other, it is reasonable to infer that the recently proffered reason is just not true. Therefore, when there are questions of fact and

two reasons provided, the pendulum swings in favor of the plaintiff as a reasonable juror could believe Voyles' account and not defendant's.

CONCLUSION

This defendant, at some point, must be set forth before a jury and allow citizens in Kansas to determine whether it has violated the law. The plaintiffs were retaliated against, and this court should expand the rights of those who have stood for what it right as opposed to drawing narrow legal definitions of "reasonably materially adverse".

STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not requested.

Respectfully submitted,

s/ Lawrence W. Williamson, Jr.
Lawrence W. Williamson, Jr. #21282
**Williamson Law Firm, LLC**
**Attorney and Counselor at Law**
816 Ann Ave
Kansas City, Kansas  66101
Telephone:  (913) 871-7060
Facsimile:   (913) 535-0736
E: l.williamson@williamsonfirm.com

Lawrence W. Williamson, Jr.

## CERTIFICATE OF COMPLIANCE

**Section 1.  Word count**

As required by Fed. R. App. P. 32(a)(7)(C), I certify that this brief is proportionally spaced and contains 7,454 words.

Complete one of the following:

I relied on my word processor to obtain the count and it is [name word processor software]:_____.

   I counted five characters per word, counting all characters including citations and numerals.

**Section 2.  Line count**

My brief was prepared in a monospaced typeface and contains 710 lines of text.

I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

_____
Lawrence W. Williamson, Jr.

## CERTIFICATE OF SERVICE

I hereby certify a copy of the above and foregoing was furnished by electronic

filing to the following on August 22, 2008:

    Kelly Rundell
    krundell@wichita.gov

                                      Lawrence W. Williamson, Jr.


                        Respectfully submitted,

                        s/ Lawrence W. Williamson, Jr.
                        Lawrence W. Williamson, Jr. #21282
                        **Williamson Law Firm, LLC**
                        **Attorney and Counselor at Law**
                        816 Ann Ave
                        Kansas City, Kansas  66101
                        Telephone:  (913) 871-7060
                        Facsimile:   (913) 535-0736
                        E: l.williamson@williamsonfirm.com

<u>ATTACHMENTS</u>

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **GRETA SEMSROTH, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 06-2376-KHV** |
| **CITY OF WICHITA,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Greta Semsroth, Kim Warehime and Sara Voyles bring suit against the City of Wichita,

Kansas alleging retaliation on the basis of sex in violation of Title VII of the Civil Rights Act of 1964

("Title VII"), 42 U.S.C. § 2000e et seq.[1] This matter comes before the Court on <u>Defendant's Motion

For Summary Judgment</u> (Doc. #84) filed January 11, 2008. For reasons stated below, the Court

sustains the motion.

## Legal Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show no genuine issue as to any material

fact and that the moving party is entitled to a judgment as a matter of law. <u>See</u> Fed. R. Civ. P. 56(c);

<u>accord</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986); <u>Vitkus v. Beatrice Co.</u>, 11 F.3d

1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome

of the suit under the governing law." <u>Anderson</u>, 477 U.S. at 248. A "genuine" factual dispute

requires more than a mere scintilla of evidence. <u>Id.</u> at 252.

---

[1]      On December 27, 2007, the Court dismissed the claims of Heather Plush as a sanction
for her failure to comply with discovery procedures. <u>See</u> <u>Memorandum And Order</u> (Doc. #78).

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the nonmoving parties must demonstrate that genuine issues remain for trial "as to those dispositive matters for which [they] carr[y] the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving parties may not rest on their pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

The Court must view the record in a light most favorable to the parties opposing the motion for summary judgment. Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). Summary judgment may be granted if the nonmoving parties' evidence is merely colorable or is not significantly probative. Anderson, 477 U.S. at 250-51. In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial. Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).

### Factual Background

The following material facts are uncontroverted, deemed admitted or, where disputed, viewed in the light most favorable to plaintiff, the nonmoving party:

The City of Wichita, Kansas (the "City") is a municipality formed under the laws of the State of Kansas. Plaintiffs are females, and at all times relevant to this action, were commissioned police officers in the Wichita Police Department (the "Department"). On July 28, 2004, plaintiffs filed suit

against the City alleging (in part) discrimination on basis of sex in violation of Title VII.  See Semsroth v. City of Wichita, No. 04-1245-MLB (D. Kan.) ("Semsroth I").  Plaintiffs' claims in this case arise out of retaliation which allegedly occurred after they filed Semsroth I.[2]

## I.     Plaintiff Semsroth

In July of 2005, Semsroth requested a break from her normal duties as a patrol officer.  At the time of this request, Semsroth was highly stressed and emotional; she had been seeing a counselor for post-traumatic stress disorder related to a robbery suspect who had shot himself in her presence.  Semsroth's request to work as the "badge on the floor" was granted.[3]

On July 9, 2005, Sergeant James Pinegar contacted Lieutenant John Bannister to report that Semsroth was working as the badge on the floor at her request.  Pinegar told Bannister that

---

[2]      Although Heather Plush is no longer a plaintiff in this action, plaintiffs submit an excerpt of her deposition testimony which highlights alleged acts of retaliation against her.  Specifically, she testified as follows:

Q.      Okay.  You also said that you thought you were investigated in retaliation for complaining of discrimination to Captain Tabor.  When did that occur?

A.      The first investigation occurred – I got served on August 30th.

Q.      And are there more than one?

A.      Yes.

Q.      How many are there?

A.      Three.

Deposition Of Heather Plush, attached as Exhibit 8 to Plaintiffs' Response To Defendant's Motion For Summary Judgment ("Plaintiffs' Response") (Doc. #91) filed March 10, 2008.

[3]      "Badge on the floor" refers to an officer who is assigned to work the front desk of a substation.  The badge on the floor answers telephone calls, makes police reports and handles walk-ins.  The record does not reveal who granted Semsroth's request to work as the badge on the floor.

-3-

Semsroth's "head was not in the game" and that she did not want to ride patrol or respond to 911 calls.

On July 10, 2005, Bannister contacted Captain Michael Allred and they decided that because Semsroth had no performance problems, she would not be required to see a Department psychologist.[4] They agreed, however, that the psychologists would be available to Semsroth at her discretion, free of charge. After speaking with Allred, Bannister met with Semsroth to discuss her well being. Bannister advised Semsroth that Department psychologists were available to counsel her if she chose. Bannister explained to Semsroth that she was not required to visit any doctor and that if she did, her visit would be kept confidential. Semsroth asked Bannister to arrange an appointment with Dr. Bowman.[5]

On July 11, 2005 Allred spoke with Semsroth and informed her that she would be allowed to work as the badge on the floor until she felt comfortable returning to patrol duty. Allred informed Semsroth of the City's employee assistance program and reminded her that department psychologists were available to help. Semsroth indicated to Allred that she might see Dr. Bowman. Allred confirmed that her visit with Dr. Bowman would be confidential because the Department had not ordered her to seek counseling. Semsroth indicated that she understood this confidentiality. Later that day, Allred spoke with Bannister and learned that Semsroth had asked Bannister to make her an appointment with Dr. Bowman. Allred told Bannister to let Dr. Bowman know that the appointment was not mandatory and that the City did not want any feedback concerning the appointment. The

---

[4] An officer may be required to undergo a fitness for duty test when he or she performs deficiently. With regard to Semsroth, officers within the department had no discussion whether she should be given a fitness for duty examination.

[5] The record does not reveal Dr. Bowman's first name.

same day, Bannister made the appointment with Dr. Bowman. Bannister told Dr. Bowman that the appointment was not mandatory and that he was assisting Semsroth in scheduling her appointment because she had been suffering from post-traumatic stress disorder.

On July 12, 2005, Semsroth voluntarily met with Dr. Bowman. During the meeting, Dr. Bowman told Semsroth that he had learned from Bannister that she was involved in a lawsuit against the City. Dr. Bowman also told Semsroth that Bannister had requested that he examine her fitness for duty. After meeting with Semsroth, Dr. Bowman called Bannister and informed him that Semsroth was having severe emotional problems and was not fit for duty. Dr. Bowman suggested that Semsroth might take a leave of absence. Bannister reported Dr. Bowman's opinion to Allred, who told Bannister that Semsroth's work assignment would not be changed because of Dr. Bowman's opinion.

On July 14, 2005, Bannister received a letter from Dr. Bowman confirming his opinion that Semsroth was not fit for duty. Bannister gave this letter to Allred. Shortly thereafter, Semsroth met with Bannister and expressed her concern that her meeting with Dr. Bowman would have a negative impact on her service record. Bannister assured her that the meeting was confidential and would have no affect on her record. Semsroth then told Bannister that she wanted to return to patrol duty and would handle future counseling on her own. She indicated that she would not be requesting leave because she had not accumulated enough paid leave and could not afford to take unpaid leave.

On July 14, 2005, Allred received a letter from Dr. Bowman which indicated that Semsroth was not fit for duty. He did not make any change in Semroth's assigned duties, however, as a result of this letter. Within a few days after July 14, 2005, Bannister told Allred that Semsroth wanted to return to patrol duty. Allred told Bannister that Semsroth could do so. On July 18, 2005, Bannister

-5-

received a second letter from Dr. Bowman which indicated that Semsroth was not fit for duty in a traffic assignment.  That same day, Semsroth was given a traffic assignment and returned to patrol duty.  The City did not take action against Semsroth as a result of her visits with Dr. Bowman or the letters which Dr. Bowman sent to Bannister and Allred.  Her annual performance evaluations, performance file and personnel file contain no reference to the fitness for duty examination or any of Dr. Bowman's letters.

Semsroth alleges that the City retaliated against her for filing <u>Semsroth I</u> by requiring her to submit to the fitness for duty examination when she had no record of deficient performance.

## II.      Plaintiff Warehime

On August 14, 2004, Warehime transferred to Mayberry Middle School to become a school resource officer.  On June 6, 2005, Captain John Speer advertised an opening for a school resource officer at Hamilton Middle School.  On June 10, 2005, Warehime applied for that position.

Under department policy, "[i]t is recommended that all members serve one (1) year in a new assignment before applying for another transfer/rotation."  Historically, an officer is not permitted to transfer from a speciality assignment before serving at least one year in that position.  Because Warehime had been the school resource officer at Mayberry for only ten months when she applied for the Hamilton position, Speer told Deputy Chief Tom Stolz that she should not be considered for the job.  Stolz determined that the Hamilton position could be filled at the beginning of the school year (<u>i.e.</u>, August) and that Warehime should not be disqualified.[6]  Some time before June 21, 2005, Captain Terry Nelson and Sergeant Jerry Quick told Warehime that she would receive the Hamilton

---

[6]      Generally, school resource officer positions are filled in August to coincide with the beginning of the school year.

position.

In a written complaint dated June 21, 2005, Warehime claimed that Detective Bob Gulliver had begun a community policing project which was almost identical to a project which she had tried to initiate. Her complaint stated that "[t]his is second time this week I have read in the paper that a male officer has proceeded with projects that I have suggested and have been turned down or put off." The complaint further stated that "[t]his is an example of discrimination by the Wichita Police Department to female officers who approach supervisors with ideas and projects which are not respected." Warehime gave the complaint to Quick. She intended for her complaint to highlight the fact that the department stopped women from developing projects. She filed the complaint to promote cooperation between herself and Gulliver. She did not believe that Gulliver knew of her project or that he had taken credit for it.

The City received Warehime's complaint on June 29, 2005. The next day, Nelson called Warehime into his office and told her that she would not be transferred to the Hamilton position. Warehime contacted the fraternal order of police to grieve that decision. On August 13, 2005, the Department transferred Warehime to the Hamilton school resource officer position. This transfer coincided with the beginning of the school year and occurred at the same time as all other school resource officer transfers. The transfer also marked Warehime's one year anniversary of service at Mayberry.

Warehime alleges that the City retaliated against her for filing the discrimination complaint on June 21, 2005, by revoking her transfer approval and returning it to her only after she contacted the fraternal order of police.

-7-

### III.    Plaintiff Voyles

In late June of 2005, Voyles contacted Lieutenant Jeffrey Easter to inquire whether his gang unit had an opening for a light duty assignment, which she desired because she was pregnant.  In response, Easter said that he had a light duty assignment which would become available in early July and that if she was allowed to, she could come to his unit and work juvenile cases.  Easter was not Voyles' supervisor, and she understood that he could not promise her an assignment in his gang unit.[7]

After speaking with Easter, Voyles met with Allred – her supervisor – to discuss her pregnancy and the need for a light duty assignment.  Voyles told Allred that she had talked to Easter and that he would have an opening in his gang unit in early July.  Allred told Voyles that if he could find her a light duty position in the field, she would be used in that capacity and would not be transferred to the gang unit.  Allred explained that he would prefer to assign Voyles to a badge on the floor position, which would free up a non-light duty officer to patrol the streets.[8]  Allred also indicated that he did not want to transfer Voyles to Easter's gang unit on the sixth floor because in Semsroth I she had complained of another officer on the sixth floor – Lieutenant James Bohannon.[9]  Although Bohannon worked in the robbery unit, Allred expressed concern with Voyles working anywhere on the sixth floor.

---

[7]    Officers are not allowed to pick their own light duty assignments.  Under normal procedure, an officer's request for light duty assignment is considered by his or her captain or direct supervisor.  Voyles' decision to directly contact another supervising officer was atypical.  In fact, Easter had never received such an inquiry from an officer.

[8]    Because officers on light duty can accomplish badge on the floor duties, the Department commonly designates such officers as badges on the floor.  This practice saves the department from restricting otherwise full duty officers to desk responsibilities.

[9]    Voyles' complaint against Bohannon concerned comments he had made about her during a previous pregnancy.

Because Allred's patrol did not have a light duty opening, he emailed other captains regarding available light duty positions. Speer responded that he had a badge on the floor opening in his patrol, and the Department assigned Voyles to light duty work as the badge on the floor in that patrol. Voyles worked as the badge on the floor until late August or early September of 2005, when she accepted a community policing position in the same patrol.[10] Voyles continued on light duty until January of 2006. Her light duty assignments did not affect her pay or the hours she worked.

Voyles alleges that the City retaliated against her for filing Semsroth I by denying her the opportunity to transfer into the gang unit.

### Analysis

Title VII's anti-retaliation provision prohibits an employer from discriminating against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). To prevail on a Title VII retaliation claim, a plaintiff must establish that retaliation played a part in the employment decision and may choose to satisfy this burden under a mixed-motive theory or a pretext theory. See Fye v. Okla. Corp. Comm'n, 516 F.3d 1217, 1224-25 (10th Cir. 2008). The mixed-motive theory requires plaintiff to "directly show that retaliatory animus played a 'motivating part' in the employment decision." Id. at 1225 (citing Price Waterhouse v. Hopkins, 490 U.S. 228, 250 (1989)). Where plaintiff is unable to directly establish that retaliation played a motivating part in an employment decision, she may rely on the three-part framework of McDonnell Douglas Corp. v.

---

[10]     Voyles had previously requested a community policing position. Although the record is not clear, this position is apparently also a light duty assignment.

-9-

Green, 411 U.S. 792 (1973), "to prove that the employer's proffered reason for its decision is a pretext for retaliation." Id. (citing Medlock v. Ortho Biotech, Inc., 164 F.3d 545, 549-50 (10th Cir. 1999)). Semsroth and Warehime utilize the McDonnell Douglas framework, while Voyles relies on a mixed-motive theory. The Court considers each claim separately.

## I.    Plaintiff Semsroth

As noted above, Semsroth alleges that in retaliation for filing Semsroth I, the City required her to submit to a fitness for duty examination when she had no record of deficient performance. Under the burden-shifting framework of McDonnell Douglas, a plaintiff must first establish a prima facie case of discrimination. 411 U.S. at 802. If she does so, the burden shifts to the employer to articulate a legitimate and facially nondiscriminatory reason for its action. Id. From there, the burden returns to plaintiff to show that the employer's reason is pretextual. Id. at 804.

To establish a prima facie case of retaliation, Semsroth must show that (1) she engaged in protected opposition to discrimination, (2) a reasonable employee would have found the challenged action materially adverse, and (3) a causal connection existed between the protected activity and the material adverse action. See Argo v. Blue Cross & Blue Shield of Kan., 452 F.3d 1193, 1202 (10th Cir. 2006). The City argues that is entitled to summary judgment because Semsroth cannot establish the second and third elements of her prima facie case.

### A.    Adverse Action

The City argues that Semsroth has not suffered materially adverse action because she understood that her appointment with Dr. Bowman was voluntary. Title VII protects individuals from retaliation that produces an injury or harm. Burlington N. & Santa Fe Ry. v. White, 126 S. Ct. 2405, 2414 (2006). For purposes of a Title VII retaliation claim, a materially adverse action is one

which "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 2415. In determining material adversity, "the significance of any given act of retaliation will often depend upon the particular circumstances." Id.; see also Williams v. W.D. Sports, N.M., Inc., 497 F.3d 1079, 1090 (10th Cir. 2007) (to warrant trial, plaintiff must show that jury could conclude that reasonable person in her shoes well might have been dissuaded from making charge of discrimination).

Semsroth argues that she suffered materially adverse action because no employee would want to be subjected to an unnecessary fitness for duty examination. She does not cite any authority, however, for the proposition that the examination which Dr. Bowman administered might dissuade a reasonable person from filing a discrimination charge. Generally, courts have rejected the argument that a fitness for duty examination, by itself, constitutes materially adverse action. See Nichols v. S. Ill. Univ.-Edwardsville, 510 F.3d 772, 786-87 (7th Cir. 2007) (plaintiff placed on administrative leave without impact to position, salary or benefits did not suffer materially adverse action by undergoing fitness for duty examination); Croswell v. Triborough Bridge & Tunnel Auth., No. 03 Civ. 2990, 2007 WL 2274252, at *13 (S.D.N.Y. Aug. 7, 2007) (rejecting fitness for duty examination as materially adverse action which might create causal connection to protected activity); Cotton v. AT&T Operations, Inc., No. 4:06-CV-438, 2007 WL 2259318, at *9 (E.D. Mo. Aug. 2, 2007) (plaintiff who receives full pay during absence and is reinstated following fitness for duty examination did not suffer materially adverse action).

Here, the record contains evidence that before Semsroth visited Dr. Bowman, two of her supervisors told her that any appointment was voluntary and confidential. Semsroth admits that she understood this. The record also contains evidence the Dr. Bowman was aware of the voluntary

-11-

nature of the appointment. These facts clearly establish that Semsroth met with Dr. Bowman at her own discretion. During the appointment, Semsroth apparently learned that her lieutenant had instructed Dr. Bowman to administer a fitness for duty examination, but the record contains no evidence that the appointment was ever mandatory or that Semsroth was formally required to submit to a fitness for duty examination.

Two days after the examination, Semsroth's lieutenant reaffirmed the confidential nature of the appointment. When Semsroth asked to return to patrol duty, her captain accommodated the request. The uncontroverted evidence demonstrates that the Department took no action toward Semsroth as a result of her visit with Dr. Bowman or any fitness for duty examination which he administered. The fact that the examination never became a part of Semsroth's performance evaluations and personnel file reflects the confidential nature of the examination. Under these circumstances, no reasonable jury would find that the administration of a fitness for duty examination in the context of a voluntary appointment would dissuade a reasonable person from making a discrimination complaint, particularly because the City took no action as a result of the examination.

B.    Causal Connection

The City further argues that Semsroth has not established a causal connection between the filing of Semsroth I and the fitness for duty examination. To establish a sufficient causal connection, plaintiff must show that defendant was motivated to commit the challenged conduct by a desire to retaliate against her protected activity. See Hinds v. Sprint/United Mgmt. Co., --- F.3d ----, 2008 WL 1795059, at *11 (10th Cir. Apr. 22, 2008). Because the filing of Semsroth I in July of 2004 and the fitness for duty examination in July of 2005 do not share a close temporal proximity, see id. at *12, Semsroth argues that a sufficient causal connection is established with evidence that the City engaged

-12-

in a pattern of discrimination.  In this regard, the Tenth Circuit has recognized that "a pattern of adverse personnel actions over a period of weeks or months may demonstrate an employer's retaliatory animus notwithstanding the absence of close temporal proximity between the employee's initial protected activity and the employer's ultimate [adverse action]."  Steele v. Kroenke Sports Enters., L.L.C., No. 06-1377, 2008 WL 360614, at *8 (10th Cir. Feb. 11, 2008) (citing Marx v. Schnuck Mkts., Inc., 76 F.3d 324, 329 (10th Cir. 1996)); see also Hinds, 2008 WL 1795059, at *12 (pattern of retaliatory conduct may provide temporal proximity sufficient to preclude summary judgment).

As evidence of a pattern of discrimination, Semsroth identifies (1) three disciplinary actions filed against Plush, and (2) the revocation of Warehime's school resource officer position at Hamilton middle school.[11]  Semsroth does not suggest that the City engaged in a pattern of discrimination *against her*.  Even assuming that evidence of discrimination against Plush and Warehime may establish causation with respect to Semsroth, see Sprint/United Mgmt. v. Mendelsohn, 128 S. Ct. 1140, 1147 (2008) (evidence of discrimination by other supervisors may be relevant in individual

---

[11]     As additional evidence of a pattern of retaliation, Semsroth claims that a supervisor said that he wished "the bitches would just die."  This statement is not supported in her statement of uncontroverted facts, and the record does not indicate when the supervisor made the statement. Semsroth also claims that she was banished to Beat 39 in December of 2003 because she complained of discrimination.  This action pre-dates the filing of Semsroth I.  Moreover, the Honorable Monti L. Belot has previously determined as a matter of law that the City had a legitimate nondiscriminatory reason for the transfer.  See Semsroth v. City of Wichita, No. 04-1245-MLB, 2007 WL 1246223, at *31-32 (D. Kan. Apr. 27, 2007).  These acts do not help to establish a pattern of retaliation which suggests a casual connection between the filing of Semsroth I and Semsroth's fitness for duty examination.

Although the record contains evidence that Bannister told Dr. Bowman that Semsroth was a plaintiff in the prior lawsuit, Semsroth does not argue that this evidence somehow establishes a sufficient casual connection between the filing of Semsroth I and her fitness for duty examination. She has presented no evidence which suggests that Bannister told Dr. Bowman to perform the fitness for duty examination because she was a plaintiff in Semsroth I.

-13-

case depending on many factors), these particular acts are insufficient to establish the necessary pattern of retaliation stemming from the filing of <u>Semsroth I</u>. In fact, Plush and Warehime expressly attribute these alleged acts of retaliation to protected activity other than the filing of <u>Semsroth I</u>. Specifically, Plush claims that the City investigated her in retaliation for complaints of discrimination to Captain Tabor and Warehime claims that the City revoked the Hamilton position because she complained to Quick that she did not receive credit for her project ideas.

Further, even if the alleged retaliatory acts could be attributed to the filing of <u>Semsroth I</u>, the record does not support the argument that they fill the gap in time between the filing of <u>Semsroth I</u> (in July of 2004) and Semsroth's fitness for duty examination (in July of 2005). The record does not reveal when the investigations against Plush occurred. The City's revocation of Warehime's position in June of 2005 – eleven months after the filing of <u>Semsroth I</u> – lacks sufficient temporal proximity to support the alleged pattern of retaliation. <u>See</u> <u>Hinds</u>, 2008 WL 1795059, at *11 (acts beginning pattern of retaliation must share close temporal proximity with protected activity). Even viewed in the light most favorable to Semsroth, this evidence does not support the causation element of her prima facie case.

On this record, the Court finds that Semsroth has not presented evidence sufficient to establish the adverse action and causation elements of her prima facie retaliation case. She has therefore failed to meet her initial burden under the <u>McDonnell Douglas</u> framework and the City is entitled to summary judgment on her claim.

**II.     Plaintiff Warehime**

As noted above, Warehime alleges that because she filed a discrimination complaint on June 21, 2005, the City revoked her transfer to Hamilton middle school. Warehime's retaliation

-14-

claim is analyzed under the McDonnell Douglas burden-shifting framework, described above. The City argues in part that Warehime cannot establish a prima facie case of retaliation because she did not suffer materially adverse action.

A materially adverse action is one which may dissuade a reasonable person from making a discrimination complaint. See Burlington N., 126 S. Ct. at 2415. Warehime argues that she suffered materially adverse action when the police department revoked her transfer from Mayberry middle school to Hamilton middle school. In this regard, the Tenth Circuit has stated that the denial of a transfer does not constitute materially adverse action where plaintiff "identifie[s] no specific rationale for the transfer other than an undefined subjective preference for the change." McGowan v. City Eufala, 472 F.3d 736, 743 (10th Cir. 2006). Here, the record contains no evidence that the Hamilton position offered Warehime better pay, benefits or hours than the Mayberry position. The fact that both positions were school resource officer positions suggests that Warehime would have performed virtually identical work at either school. Also, the transfer was not permanently denied. At most, Warehime temporarily lost the opportunity to transfer to a position which she subjectively preferred. Under these circumstances, the Court finds no genuine issue of material fact whether Warehime suffered materially adverse action when the department revoked her transfer to Hamilton middle school. See id. (no materially adverse action where transfer offered no difference in pay or benefits, was not less arduous and was not permanently denied); see also Carrero v. Robinson, No. 05cv-02414-MSK-CBS, 2007 WL 1655350, at *14 (D. Colo. June 5, 2007) (to show denied transfer materially adverse, plaintiff must show that requested assignment offered substantially different benefits or conditions or employment, not merely that she subjectively desired different assignment).

Because the record evidence is insufficient as a matter of law to establish that Warehime

-15-

suffered materially adverse action, she has not met her initial burden under <u>McDonnell Douglas</u> and the City is entitled to summary judgment on her claim.

## III.   Plaintiff Voyles

As noted above, Voyles alleges that because she filed <u>Semsroth I</u>, the City denied her the opportunity to transfer into the gang unit.  Voyles argues her retaliation claim under a mixed-motive framework.[12]  Under the mixed-motive theory, plaintiff must directly show that retaliatory animus played a motivating part in the employment decision.  <u>Fye</u>, 516 F.3d at 1225.  If she can do so, the burden of persuasion shifts to the employer to prove that it would have taken the same action absent the retaliatory motive.  <u>Id.</u>

For purposes of a mixed-motive analysis, direct evidence of discrimination includes evidence of "oral or written statements on the part of a defendant showing a discriminatory motivation." <u>Cuenca v. Univ. of Kan.</u>, 101 Fed. Appx. 782, 788 (10th Cir. 2004) (quoting <u>Kendrick v. Penske Transp. Servs., Inc.</u>, 220 F.3d 1220, 1225 (10th Cir. 2000)).  Voyles argues that Allred's stated reason for refusing the transfer (<u>i.e.</u> it would put her near an officer of whom she had complained about in <u>Semsroth I</u>) constitutes direct evidence of retaliation.  The City does not dispute this argument, and for purposes of the motion, the Court assumes that it does.

------

[12]   Citing <u>Fox v. Wichita State University</u>, 489 F. Supp.2d 1216 (D. Kan. 2007), the City argues that Voyles cannot proceed under a mixed-motive theory because she did not assert such a claim in the pretrial order.  In <u>Fox</u>, the court found that on summary judgment, a plaintiff cannot argue a mixed-motive claim which has not been set out in the pretrial order.  <u>Id.</u> at 1227.  More recently, however, the Tenth Circuit has explained that "a plaintiff need not characterize her case as a mixed-motive or pretext case from the outset."  <u>Fye</u>, 516 F.3d at 1225 (application of mixed-motive or pretext theory left to plaintiff's persuasion of factfinder).  At least one court of this district has used the language in <u>Fye</u> to reject the argument that a mixed-motive theory must be preserved in the pretrial order.  <u>See</u> <u>Wright v. C & M Tire, Inc.</u>, --- F. Supp.2d ----, 2008 WL 1701688, at *7 n.6 (D. Kan. Apr. 11, 2008).  The Court agrees that a mixed-motive theory of retaliation need not be expressly set out in the pretrial order, and will allow Voyles to argue her claim accordingly.

Assuming that Voyles has produced direct evidence of discrimination, the City argues that it is nonetheless entitled to summary judgment because Voyles did not suffer adverse action. Regardless whether plaintiff asserts her retaliation claim under a mixed-motive or pretext theory, adverse action is a fundamental component of the claim. Wright, 2008 WL 1701688, at *7 (citing Gudenkauf v. Stauffer Commc'ns, Inc., 158 F.3d 1074, 1078 (10th Cir. 1998) (in mixed motive case, plaintiff required to establish adverse employment action)). Indeed, without distinguishing between mixed-motive and pretext theories of retaliation, Burlington Northern speaks generally of Title VII's anti-retaliation provision as protecting employees "not from all retaliation, but from retaliation that produces an injury or harm." 126 S. Ct. at 2414.

Voyles argues that she suffered adverse action because Allred denied her request to transfer to the gang unit. As discussed above, the denial of a transfer constitutes a materially adverse action only if the employee presents some evidence beyond her subjective desire for the position. McGowan, 472 F.3d at 743. Here, Voyles' brief in opposition to the motion for summary judgment reflects nothing more than a purely subjective preference for the gang unit. See Plaintiffs' Response (Doc. #91) at 14. ("no reasonable employee would complain about a supervisor harassing them or make any other complaint if it will affect their position of choice"). As with Warehime, the record contains no evidence that the gang unit was objectively preferable – in terms of pay, benefits or work load – to the light duty assignments which Voyles received.[13] In fact, Voyles eventually received a community policing position in which she had previously expressed interest.

On this record, the Court finds no evidence that Voyles suffered materially adverse action

---

[13]    Here, Voyles received a light duty assignment which she required given her pregnancy, but complains that it was not the one she wanted.

when Allred denied her request to transfer to the gang unit.  Although Allred may have denied the transfer because Voyles had complained of a particular officer in <u>Semsroth I</u>, the fact that she suffered no materially adverse action is fatal to her claim.  The Court therefore finds that the City is entitled to summary judgment.

**IT IS THEREFORE ORDERED** that <u>Defendant's Motion For Summary Judgment</u> (Doc. #84) filed January 11, 2008 be and hereby is **SUSTAINED**.  The Clerk of the Court is directed to enter judgment in favor of defendant in this matter.

Dated this 28th day of April, 2008 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
Kathryn H. Vratil
United States District Judge

-18-